2014-14-90. The next case is FinF v. Smartthingsz, 2014-14-90. The patent in suit is a simple device that relates to a toe exercising or stretching device. The issue in this case, really the single issue of claim construction, involves the characterization of the structure of the device between the toes. The first 34 claims of the patent, which are not asserted, define that structure as post form of an elastic material. And that's consistent with what the patent says. In one passage, for example, in Summary of Invention, the patent says the present invention relates to an exercise tool and more particularly to an exercise tool devised as a foot therapy device to align, separate, and stretch toes. And then it says, in one aspect, meaning in this embodiment, the devices comprise a frame that includes a top portion and a bottom portion. A plurality of posts, and it says only posts, not separators, that are formed of an elastic, e.g. elastic material, et cetera. And then a few lines down, it says the posts have a length, a diameter, and a circumference, and further possess elastic, e.g. elastomeric properties. But we're dealing with Claim 35, right? Yes, Your Honor. But the district court construed the term separator, which only appears in Claim 35. Exactly the same way the term posts form of an elastic material here in First 34 claims. Let me take you to the patent. With respect to Column 1 of the patent, where there is a discussion of the prior art, and the patent refers to the punitivgawa, is that how you pronounce it? I'm sorry? The punitivgawa, the 263? I can't help you much with that, Your Honor. Prior art, okay. It refers to the prior art, and then it says, discloses a toad consisting of a frame with five poles, each separated by a toad post. And then when you go back to the 263, that patent actually looked very much like the figures that are used to describe Claim 35. In other words, there don't seem to be individual posts. There seem to be what the district court or Claim 35 characterized as separators. And yet when describing the prior art, the patent says that those spaces between the holes are posts. Yes, but in the claim, in Claim 35, it uses the term separator, not post. And our position here is that the district court essentially said for purposes of Claim 35, separators is a particular category of separators. That is, posts formed of an elastic material. So the definition of... Well, for Claim 35, they said that the separators were a... What essentially what the district court appears to have been saying is that the separators are actually posts, but they're posts that are attached to top and bottom, as opposed to the earlier diagrams. Let me jump right to my punchline. I was going to try to build to it. But the fact is the district court said separators in Claim 35 are posts formed of an elastic material, exactly like the first 34 claims. And the judge gave two reasons for that. One, he said the claims of the patent always equates posts and separators. And then the second reason is the invention of this patent. The only invention of the patent is elastic posts. But that isn't correct. The fact is there is another embodiment. When I read this first passage, that was talking about the post embodiment. Figure 15, which I think is the figure Your Honor is referring to, specifically shows a one-piece device that doesn't have posts in the sense that it's not round. And the specification makes clear it doesn't have to be elastic. But I guess my question is the reference in column one to the 263, where they refer to the section between the holes as posts. If you look back to the 263, it looks very much like Figure 15. That's true. Okay, so there they were equating that, when you say they were equating posts and separators, they were calling that section between the holes posts, were they not, for purposes of describing the product? Yes, but for purposes of the claim it's different. The issue here is, is separator in claim 35 the same as a post in the other 34 claims? And the answer is no. Your point is that the issue here isn't what Funadogawa discloses, that's prior art. That's right. It's what this patent discloses, and it discloses both posts and separators, and the separators are not elastomeric. Yes, if you look at the language in the specification that describes Figure 15, it first says another aspect of a foot therapy and toe aligning device, according to the present invention, so that means a different embodiment, is shown in Figure 15. The foot therapy and toe aligning device comprises a frame 1502 with a separator 1503. So this shows that separator and post are never used together, which is what the district court erroneously said. And also, there is a separate embodiment of the invention that is a separator, that is different than a toe post. And then it goes on to say, the frame 1502 may be constructed of any suitable material, non-limiting examples of which include plastic, silicone and coir. Those include both elastic and non-elastic materials. Nowhere in this passage, and if you keep reading that, does it say the separator has to be elastic. There is another passage in Column 3, and that is at page 63, at Column 5, lines 5 through 20, where it describes the separator. Also, it never says there that the separator has to be elastic. So the district court's basis for finding that separators were a special category of separators, that is, posts made of an elastic material. How does what the separator does in this Claim 35 differ from the post in the context of this passage? It does some of the same things, but not in the same way. The separator of Claim 35 in Figure 15 doesn't have to be elastic. So you don't have to be able to pull the post to be able to slide the toes and then pop it back down, for one thing. It can simply rely on the fact that there is a gap that will force the toes apart, and that alone provides some therapeutic benefit according to that. But you can see that everything in the written description, up until that description of Figure 15 and its follow-on figures, talks about solving the problem of having materials that are insufficiently elastic to allow for them to form between the toes. Yes, but the embodiment of Figure 15 and the language in Column 13 and all that I read clearly indicates there's a separate embodiment that doesn't rely on elasticity. So I take it that you would concede that most of the general principles that your friend on the other side would argue or that the district court relied on when talking about what was weak in the prior art, what the present invention is, that all of those, in the absence of what your key language would lend itself to the district court's construction until you get to that very express language as it relates to Figure 15. There is a second embodiment to which the earlier language doesn't apply because that earlier language in the specification was directed at the elastic post-embodiment. I think Judge O'Malley's point is, suppose that discussion in Column 13 and Figure 15 didn't exist in this patent. We'd have a really hard case then for suggesting that separators don't have to be elastic. If this embodiment didn't exist, the patent in a couple of other places talks about separators and it doesn't, in those places, distinguish them from post. Your point is, this case is different because it says the frame, which includes the separator, quite clearly, can be made of, and it lists three materials, some of which are clearly not elastic. Right, and it says without limitation as well. You don't have to make a hard argument, which is if this didn't exist, we should nonetheless have some sort of distinction because you're saying the patent expressly distinguishes on its face. I agree with that. I think without the language in Column 13 and on describing the embodiment of Figure 15, it would be a different case. And that's not the case we have here. And Claim 35 would probably not be there. Probably not because Claim 35 was probably in there specifically to cover that additional embodiment found in Figure 15. So the bottom line of all of this is that this records two bases for the claim construction that equated toe posts made out of an elastic material, formed of an elastic material, and separator is the two grounds that they're toe posts and posts formed of an elastic material, and separator are always equated, which is never equated in the patent, and that the only invention in the patent is the elastic post. And that's not true because there's a second embodiment, which the patent makes clear is a different embodiment. There's two earlier patents that the patent holder had, as to which there were terminal disclaimers in connection with this claim, Claim 35, right? I think I did, but I don't recall that specific point, Your Honor. So there were terminal disclaimers as to the two earlier patents, both of which contain identical figures to the Figure 15 and Figure 17 of the patent in suit. Now, what is the point of having a new claim in a new patent that, again, has a different written description and then giving a terminal disclaimer if there wasn't something different between the new patent and the old patent? I can't explain the why's and where's of the prosecution history. The issue here is that there is one claim here, Claim 35, that stands out. It's clearly directed at the embodiment of Figure 15 and the language in Column 13 and following, and the issue is the claim construction of that Claim 35 term separator, which I think is intended to cover that embodiment. However, it ended up here, and I can't explain why it's here in this patent. This is a patent in a series of three, as Your Honor is pointing out. Do you want to save some rebuttal time into it? We'll hold it for you. Thank you. Mr. Hoffman. Thank you, Your Honor. May it please the Court. The one thing that is clear from the written description is that the elements that go between the toes have to be elastic, have to be elongatable, and must be able to then contract and to engage the user's toes in order to perform therapeutic... But isn't it clear that it is posts that must be elastic? Your Honor, the written description talks about that in connection with posts, but then it also talks about in connection with another embodiment. It uses the term separator, but it says throughout that the present invention requires all of these features of that element that goes between your toes. And it would be an anomalous result to say that the present invention requires it, and then the description of claim 15, or I'm sorry, figure 15, the figure 15 embodiment, talks about it being the present invention to say it doesn't have the very necessary elastic elements that are required by the specification. I mean, I give you that most of your basic principles about how we would interpret this would seem to go in favor of the construction adopted by the District Court until you get to column 13. And here's the problem, is that yes, it says, according to the present invention, which does seem to be an elastic material invention, but then you describe the foot therapy and toe lining device comprises a frame and a separator. So the separator 1503, which is exactly the piece between the holes, and then you describe the kind of material that that entirety of that thing can be made of, and it doesn't say it has to be elastic. How do you get around that? Okay, well, Your Honor, let me, the passage that you read says it is a frame with a separator. So it distinguishes between a frame and a separator. No, the frame 1500 is the entirety of what's shown in the diagram. And then the separator is within the frame. That's how your own diagram shows it. The frame is 1502 and the separator is 1503, and 1502 encompasses 1503. So I'm just going to quickly look at figure 15. I believe that, Your Honor, in accordance with reading the specification, the frame hits the top and the bottom, and the separator extends between the top and the bottom. Well, look at figure 15. See where it says 1502 with the brackets that say the whole thing? I see where there's the bracket. Yes, Your Honor. And moreover, isn't the frame defined not as a top and bottom, like you said? The frame 1502 has a top portion, 1504, a bottom portion, 1506, a front portion, 1508, and a back portion, 1510. So you agree that 1508 and 1510, the front and back portions, are likewise part of the frame, correct? Yes. Okay, so look at the diagram. 1508 points to what? It's part of the bottom of the frame portion in the front. It's directly under a separator, but it's right on the frame. Looks to me like it's pointing to part of the separator. Actually, if you draw a line across, if you draw a parallel line with a ruler across, the line actually goes above where the holes begin on the bottom. And I thought everything in between the holes is part of the separator. Your Honor, I'm going to respectfully say that I believe that the frame does have those components, just like it's described in connection with the earlier embodiment as having those same components. One of the other passages that I think helps support that the frame can be one material and that which goes between the toes can be another material. How could this even be a different material? Look at it. It's a single, unitary construction. This picture doesn't have dotted lines or dashed lines or any sort of lines that illustrate separators as distinct from frame. Your Honor, I would agree that the drawing has look. I'm not sure that all of the elements of how it's constructed has to be laid in the drawing in terms of what the materials are. They're described in the written description later on. If we go back to, for example, looking at column A65, column 9, there's a portion of the description with respect to the earlier embodiment that says it should be noted that the description above with respect to the elastic material of the toe post is also applicable to the frame. For example, the frame can also be formed of elastic material. So there's a clear indication that even in the earlier embodiment, the frame can be one material and the post can be another material. Is there anything specifically stated in this specification that a separator is elastomeric? In column 14 at A67, the written description talks about the foot therapy and toe alignment device having to be easily distorted and manipulated to allow easy insertion as well as articulation and accommodation of the toes. That marries the description of the separator to the post in the fact that you have to be able to have those properties of manipulation. But isn't it the holes, the openness of portions of the holes that this description says provides that? That's one of the features, but it still has to have the ability to be manipulated. The operable toe holes help facilitate the manipulation, but you still have to have the ability to manipulate the toe holes and that is conducted in accordance with the rest of the specification. What the present mention teaches is that the material has to be elongatable, has to be elastic, and has to be able to conform to the shape of the user's toe upon release. I may be repeating what Sister Mallory just said, but are you suggesting the fact that it says may be easily distorted and manipulated is what points us to the elastomeric? That's a passage that says it has to have those features. No, but the predicate of that sentence says because the open toe hole is not sealed, the foot therapy device may be easily distorted. So it isn't saying because it's elastomeric, it actually is saying that it's because it's not sealed, it's open, and that's why it would be manipulatable. The openness of it helps the ability to elongate the post, to manipulate the device. If the rest of it were rigid and the toe holes were just open on the end, it wouldn't have the ability to be manipulated. It would still be a rigid device. So that ties into the fact that it has to be elastic in order to be manipulated with the open toe holes. The reference that was referred to earlier, the Flint-Sagawa reference, was a reference that had, for lack of a better term, closed toe holes on the end. This invention defines over that by allowing everything that was said with respect to Flint-Sagawa that it can be elongated, that Flint-Sagawa was deficient in the sense that it was not elongatable and did not provide the necessary characteristics for the therapeutic benefits as described in the patent, is equally applicable here. So how do you explain to me this prosecution history? Because you have two prior patents that use the exact same diagram. So figures 1 and 2 of your earlier patents, in each of the earlier patents, the 915 and the 939, they both use the identical diagrams as figures 1 and 2 that show up here as figures 15 and 16. And in the written description, they have the identical language describing what materials those things can be made from that show up in those diagrams. So the claim is slightly different, 35, than the claims in the earlier, but not much. So how do we end up with this claim all of a sudden appearing at the end of the prosecution history in this patent? I can't explain the prosecution. I wasn't involved with why this one was here. What I looked at was, what does this one mean now in light of the current specification of which it's a part of? And what it teaches to somebody's skill in the art is that the particular embodiment that's here, that's described in that claim, has to have all of those properties that we talked about, about it being elastic. And I will say, I didn't prosecute the earlier cases, and I'm not aware of, when I saw the prosecution history, this claim was added into the file, and it got allowed, I think, without amendment when it was put into the file. And I think you have to interpret this claim in light of the specification of this patent of which it's a part. But isn't it true that the prosecution history, Claim 35 issued, it was actually Application Claim 41. Originally, when you filed the application, this exact claim, every single one of its words, was Application Claim 41. And there was an Application Claim 42, which interestingly wasn't carried forward into the actual issued patent. I don't know why, because it wasn't rejected for a reason that was obvious to me. But for whatever reason, it wasn't carried forward. And Claim 42, as originally filed, was solely limited to the following statement. The separators are of an elastic material. So, obviously you anticipated the possibility that the separators could be of an elastic material because your original prosecution, as originally filed, had a dependent claim attached to this identical claim that allowed for that possibility. But under principles of claim differentiation, why does that mean the broader claim, this one, doesn't limit itself to elastic material? First, in terms of this case, the claim is not there. So there's no doctrine of claim differentiation, I think, invoked because it doesn't appear in the final result. You're right. There's absolutely a difference there. But clearly, during prosecution, as originally filed, you contemplated that this claim didn't limit itself to elastic material because the dependent claim had only one limitation, and it was elastic. What I can say is, again, I wasn't the person who prosecuted, so a reasonable interpretation is that it could be because they read the specification, saw it included as separators require elastic, and didn't need it any further as a part of the requirement. I think in the end of the day, we have to look at what does the specification teach? The case law from the court is very specific. What does the case law teach that is the invention here? And is the claim to be construed in accordance with the teachings of the specification to achieve that which the inventor invented? And I believe that what the district court did was proper in determining that the separators were required to be elastic and have the very properties that differentiated this invention from those in the prior art. And the case law from this court about the disclaimer language, I believe, is applicable here because there was a description of what was deficient in the prior art, and that's specifically how these claims overcome those particular deficiencies. Would the court like to hear about the other issue that's in the case? You have two and a half minutes to use as you choose. All right, thank you. With respect to the injunctive relief that was granted by the court, the complaint by the appellant is that the district court didn't identify a causal nexus between the harm and the absence of the causal nexus thus was fatal to the grant of the injunction. And I submit that the district court didn't use the word causal nexus, but nonetheless found that a causal nexus existed because the cases we write upon by the appellant, the Apple Trilogy, the Apple Trilogy talk about a series of cases where the feature drives the sale of the accused product. And in this case, the accused product is the entire patented device. In other words, it's not a single element of the patent that forms the accused device. It's the whole claim that forms the basis for the accused device. So the causal nexus is apparent because it is that which is patented that is being sold. But furthermore, there are other harms here that are only directly resulting from the infringement. And those harms that are only directly resulting from the infringement include the fact that we have now a loss of market exclusivity. That's only because by way of the infringement. So therefore, that harm has to be related to the infringement. The fact that they can't satisfy a judgment, it was apparent that they couldn't satisfy a judgment, is also another basis for the granting of the injunctive relief here. Those elements are not even challenged by the appellant on appeal. The only thing that they said is the court didn't use the term causal nexus. So therefore, there's a fatal deficiency in the grant of the injunction. And we believe that that's just not proper in view of the facts that have been admitted, not contested, and the district court properly found it did not abuse its discretion in granting the injunctive relief. Thank you, Mr. Hoffman. Mr. Hu has a few minutes to rebut if he needs it. I will try to use just part of that. I will just summarize our basic position on this. There are two embodiments in the patent. Separators are never equated with posts. There is no description that requires an elastic separator. One of the references that counsel for Fenton F. referred to that said the frame could be elastic is in the context of elastic posts. It's not a separator embodiment. The only disclosure of a separator in the patent in the two places that I cited, column 3, I believe, and column 15 or 13, show that the separator does not have to be elastic, that it's a more generic term. And finally, the gist of their argument seems to be that the quote, essence of the invention of one embodiment takes priority over explicit written description of another embodiment of the invention that's claimed in Claim 35. Thank you. Thank you, Mr. Hu. It's clear that both of you are on your toes concerning this case. We'll take it under advisement.